UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| Z.A., an Infant, by and through his Parents and Natural Guardians, CARMIT ARCHIBALD and GEORGES ARCHIBALD, and CARMIT ARCHIBALD, *individually,*<br><br>Plaintiff<br><br>v.<br><br>HYATT CORPORATION<br><br>Defendant. | Case No. 1:24-cv-03742 |

**PLAINTIFF'S MEMORANDUM OF LAW IN OPPOSITION TO
DEFENDANT HYATT CORPORATION'S MOTION FOR SUMMARY JUDGMENT**

EVAN MILES GOLDBERG, PLLC
400 East 57th Street, Ste. 4M
New York, NY 10022
Tel.: (212) 888-6497
Fax: (646) 751-7938
egoldberg@emglawfirm.com

*Attorneys for Plaintiffs Z.A., et al.*

## TABLE OF CONTENTS

PRELIMINARY STATEMENT..................................................................................1

FACTS ..................................................................................................................2

ARGUMENT..........................................................................................................2

  I.    **AT THIS EARLY STAGE, PLAINTIFFS NEED ONLY MAKE A PRIMA FACIE SHOWING OF JURISDICTION.** ....................................2

  II.   **DEFENDANT'S MOTION IS PREMATURE AND THIS COURT SHOULD ALLOW JURISDICTIONAL DISCOVERY**.................................3

  III.  **PLAINTIFF'S SHOWING OF A TORTIOUS ACT BY HYATT CONFERS LONG ARM JURISDICTION UNDER CPLR 302(A)(3) AND DOES NOT OFFEND DUE PROCESS.** ...............................................4

  IV.  **DEFENDANT'S MOTION TO DISMISS BASED ON FORUM NON CONVENIENS SHOULD BE DENIED**..........................................9

**Legal Standard for Forum Non Conveniens**........................................................10

  A.  **Plaintiffs' Choice of Forum Should be Accorded Substantial Deference**..................11

  B.  **St. Kitts is Not an Adequate Alternative Forum**..........................................12

  C.  **The Private and Public Interest Factors Do Not Support Dismissal**........................................................................................14

      i. The Private Interest Factors.......................................................14

      ii. The Public Interest Factors ......................................................19

CONCLUSION.......................................................................................................22

CERTIFICATE OF SERVICE...............................................................................23

## TABLE OF AUTHORITIES

### CASES

*Amer. Steamship Owners Mut. Protection v. Lafarge*,
    474 F. Supp. 2d 474 (S.D.N.Y. 2007) .........................................................................19

*Arrowsmith v. United Press Int'l*,
    320 F.2d 219 (2d Cir. 1964) .........................................................................................2

*Ball v. Metallurgie Hoboke-Overpelt, S.A.*,
    902 F.2d 194 (2d. Cir. 1990)........................................................................................2

*Berne Street Enter. v. American Export Isbrandtsen*,
    289 F. Supp. 195 (S.D.N.Y. 1968).................................................................................3

*Breindel v. Levitt & Sons, Inc.*,
    294 F. Supp. 42 (E.D.N.Y., 1968) ..............................................................................14

*Brown v. Grand Hotel Eden*,
    214 F. Supp. 2d 335 (S.D.N.Y. 2002)..........................................................................10

*Brown v. Marriott Int'l, Inc.*,
    14-CV-5960 (SLT) (MDG) (E.D.N.Y. Oct. 6, 2017)......................................... 12, 13

*Calavo Growers of California v. Generali Belgium*,
    632 F.2d 963 (2d Cir. 1980), *cert. denied* 449 U.S. 1084 (1981) ...........................15

*Chirag v. MT Marida Marguerite Schiffahrts*,
    604 Fed. Appx. 16 (2d Cir. 2015) ................................................................................2

*Cooney v. Osgood Mach.*,
    81 N.Y.2d 66 (N.Y. 1993).........................................................................................20

*Cromer Finance Ltd. v. Berger*,
    158 F.Supp 2d 347 (S.D.N.Y. 2001).........................................................................15

*Dorchester Fin. Sec. Inc. v. Banco BRJ, S.A.*,
    722 F.3d 81 (2d Cir. 2013)......................................................................................2, 3

*Evans v. Planned Parenthood of Broome County*,
    43 A.D.2d 996 (N.Y. App. Div. 1974) .........................................................................4

*Fournier v. Startwood Hotels & Resorts Worldwide, Inc.*,
    908 F.Supp.2d 519 (S.D.N.Y. 2012) ...................................................................13, 20

*GlobalNet Financial,Com, Inc. v. Frank Crystal & Co., Inc.*,
   449 F.3d 377 (2d Cir. 2006). ...................................................................20

*Gulf Oil Corp. v. Gilbert*,
   330 U.S. 501 (1947).........................................................................10, 11

*Iragorri v. United Techs. Corp.*,
   274 F.3d 65 (2d Cir. 2001).........................................................10, 11, 14

*Johnson v. UBS AG*,
   791 F. App'x 240 (2d Cir. 2019) ..............................................................3

*Klaxon Co. v. Stentor Co.*,
   313 U.S. 487 (1941)................................................................................19

*Koster v. American Lumbermens Mut. Cas. Co.*,
   330 U.S. 518 (1947)................................................................................11

*Norex Petroleum Ltd. v. Access Industries*,
   416 F.3d 146 (2d Cir. 2005)............................................................*passim*

*Peterson v. Spartan Indus., Inc.*,
   33 N.Y.2d 463 (N.Y. 1974)......................................................................3

*Piper Aircraft Co. v. Reyno*,
   454 U.S. 235 (1981) ....................................................................10, 11, 12

*Ramirez de Arellano v. Starwood Hotels & Resorts Worldwide, Inc.*,
   448 F.Supp.2d 520 (S.D.N.Y. 2006)................................................13, 20

*Rosen v. Ritz-Carlton Hotel Co.*,
   2015 WL 64736 (S.D.N.Y. 2015) ..........................................................18

*Schultz v. Boy Scouts of Am.*, Inc.,
   65 N.Y.2d 189 (1985).......................................................................20, 21

*Sinochem Int'l Co. v. Malaysia Int'l Shipping Corp.*,
   549 U.S. 422 (2007)................................................................................11

## STATUTES

CPLR 302(a)(1)-(4).......................................................................................9

Fed. R. Civ. P. 12(b)(2) .............................................................................2, 3

Fed. R. Civ. P. 44.1. ...........................................................................................21

Fed. R. Civ. P. 56................................................................................................2, 3

Gen. Bus. Law § 349 .......................................................................................7, 8, 9

OTHER AUTHORITIES

14D Charles Alan Wright & Arthur R. Miller,
    *Federal Practice & Procedure* § 3828 (3d ed. 1998).................................................10

Hyatt Hotels Corp., Annual Report (Form 10-K), at 17 (Feb. 23, 2023) ......................................6

## PRELIMINARY STATEMENT

Plaintiffs Z.A., an infant under the age of 14, and Carmit Archibald ("Carmit" or "Dr. Archibald") (Collectively, "Plaintiffs") submit this memorandum of law in opposition to the motion filed by defendant Hyatt Corporation ("Defendant," "Hyatt Corp," or "Hyatt"), for summary judgment on the issues of personal jurisdiction and *forum non conveniens* ("FNC").

Hyatt seeks to prematurely dismiss this case by moving for summary judgment without allowing for discovery. . Plaintiffs, New York residents, allege that Hyatt is vicariously liable under a theories of agency or agency by estoppel for severe injuries sustained by Z.A., an infant, while on vacation at the Park Hyatt St. Kitts, located on the island nation of St. Kitts and Nevis. Plaintiffs booked their stay through Hyatt's official website, Hyatt.com, inducing Plaintiffs to rely on Hyatt's brand and safety standards.

Hyatt's motion fails to address the substantive claims of apparent agency and agency by estoppel, which Plaintiffs rely on to hold the corporation accountable. Instead, Hyatt challenges this Court's jurisdiction and argues for dismissal based on FNC. Furthermore, Hyatt's claims that the small island nation of St. Kitts is a more convenient forum lack merit— plaintiffs are American citizens and Hyatt Corporation headquartered in Illinois and incorporated in Delaware. Plaintiff's choice of forum should therefore not be disturbed.  Hyatt's attempt to bypass jurisdictional discovery process is improper and the Court should deny it..  Alternatively, Plaintiffs request that the Court stay Hyatt's motion and allow for jurisdictional discovery to conclusively establish this Court's jurisdiction.

**FACTS**

Plaintiffs' counter statement of material facts is attached as Exhibit B and incorporated herein. Plaintiff also hereby incorporates her verified complaint, which is attached as Exhibit C.

**ARGUMENT**

I.    **AT THIS EARLY STAGE, PLAINTIFFS NEED ONLY MAKE A *PRIMA FACIE* SHOWING OF JURISDICTION.**

In diversity cases, personal jurisdiction is determined by the law of the state in which the court sits.  *See, e.g., Arrowsmith v. United Press Int'l*, 320 F.2d 219, 223 (2d Cir. 1964) (en banc).  Although defendant Hyatt Corp. styles its motion as one for summary judgment, it's really a 12(b)(2) motion to dismiss based on lack of personal jurisdiction.  In its brief, Defendant generally cites case law applying Rule 12(b)(2).  The nature of the plaintiff's burden on a motion to dismiss for lack of personal jurisdiction varies with the stage of the litigation.  *Ball v. Metallurgie Hoboke-Overpelt, S.A.*, 902 F.2d 194, 197 (2d. Cir. 1990).  Plaintiff should not be made to guess whether Defendant's motion is one under Fed. R. Civ. P. 12(b)(2) or 56—this Court should decide Defendant's motion under the standards provided by Rule 12(b)(2)  When a defendant challenges jurisdiction by way of a 12(b)(2) motion, "the plaintiff need only persuade the court only that its factual allegations constitute a prima facie showing of jurisdiction.  *Dorchester Fin. Sec. Inc. v. Banco BRJ, S.A.*, 722 F.3d 81, 85(2d Cir. 2013).  *Id.* At 85.  Prior to discovery, the plaintiff need only plead "an averment of facts that, if credited by the trier, would suffice to establish jurisdiction over the defendant." *Dorchester*, 722 F.3d at 84; *Chirag v. MT Marida Marguerite Schiffahrts*, 604 Fed. Appx. 16, 19 (2d Cir. 2015) ("a *prima facie* case requires non-conclusory fact-specific allegations or evidence showing that activity that constitutes the basis of jurisdiction has taken place.") Plaintiff's burden is governed by a "sliding scale, which "varies depending on the procedural posture of the litigation." *Dorchester*, 722 F.3d

at 84.  Before discovery has occurred, as is the case here, the plaintiffs need only make legally

sufficient allegations of jurisdiction.  *Id.*  In resolving a 12(b)(2) motion to dismiss for lack of

personal jurisdiction, a district court may consider materials outside the pleadings. *Dorchester*

*Fin. Sec.* 722, F.3d at 86.  *See also Johnson v. UBS AG*, 791 F. App'x 240, 241 (2d Cir. 2019)

("Courts may consider materials outside the pleadings on a motion to dismiss for lack of

personal jurisdiction without converting it into a summary judgment motion").

## II.    DEFENDANT'S MOTION IS PREMATURE AND THIS COURT SHOULD ALLOW JURISDICTIONAL DISCOVERY.

Even if the Court chooses to decide this motion under Fed. R. Civ. P. 56, discovery in aid

of opposing defendant's motion is expressly permitted when "facts essential to justify opposition

to defendant's motion may exist but cannot be stated." *Peterson v. Spartan Indus., Inc.*, 33

N.Y.2d 463, 465 (N.Y. 1974).  If the defendant's motion is treated as one for summary judgment,

Fed. R. Civ. P. 56(d) is applied liberally in Federal courts as a safeguard against the premature

grant of summary judgment.  This rule allows a party not having specific material contradicting

its adversary's presentation to survive a motion for summary judgment by presenting reason to

justify the failure of proof.  *See e.g., Berne Street Enter. v. American Export Isbrandtsen,* 289 F.

Supp. 195, 197 (S.D.N.Y. 1968).  Here, the Archibalds have not had *any* opportunity to seek

discovery on the fact-intensive questions of personal jurisdiction and FNC.   Plaintiffs should

have further opportunity to prove that this Court has jurisdiction and that New York is a proper

forum.

III.    **PLAINTIFF'S SHOWING OF A TORTIOUS ACT BY HYATT CONFERS LONG-ARM JURISDICTION UNDER CPLR 302(A)(3) AND DOES NOT OFFEND DUE PROCESS.**

Hyatt Corp. has sufficient minimum contacts with New York, and exercising jurisdiction over it does not offend traditional notions of fair play and substantial justice. As such, asserting personal jurisdiction over Hyatt Corp. meets constitutional due process requirements.

Plaintiffs' *prima facie* case of tortious conduct by Hyatt Corporation establishes longarm jurisdiction under CPLR 302(a)(3). To sustain longarm jurisdiction, Plaintiff may show facts that would give rise to longarm jurisdiction under CPLR 302(a)(2) and/or CPLR 302(a)(3). A plaintiff's conclusion that defendant's acts are "tortious" is generally accepted at the jurisdictional stage. If the defendant was the performer of the acts and the complaint "adequately frames a cause of action in tort arising from those acts," the jurisdictional requirements are met. *Evans v. Planned Parenthood of Broome County*, 43 A.D.2d 996, 997 (N.Y. App. Div. 1974). This approach also avoids the issue of divestiture of the right to trial by jury if the court's finding of jurisdiction were allowed to be dispositive of the merits as well. CPLR 302(a)(3) provides in pertinent part::

> As to a cause of action arising from any of the acts enumerated in this section, a court may exercise personal jurisdiction over any non-domiciliary . . . who in person or through an agent . . . commits a tortious act without the state causing injury to person or property within the state . . . if he (i) regularly does or solicits business, or engages in any other persistent course of conduct, or derives substantial revenue from good used or consumed or services rendered in the state, or (ii) expects or should reasonably expect the act to have consequences in the state and derives substantial revenue from interstate or international commerce.

Additional showings are necessary under CPLR 302(a)(3)(i) and (ii). Subdivision (a)(3)(i) requires a showing that the nondomicilliary must regularly do or solicit business or engage in any other persistent course of conduct or derive substantial revenue from goods or services rendered in New York. Subdivision (a)(3)(ii) requires two showings which are

4

foreseeability and revenue.  In addition to the statutory requirements, an inquiry as to whether asserting jurisdiction meets the constitutional standards of due process may be necessary.

Here, Hyatt Corporation, a non-domiciliary with its principal place of business in Chicago, Illinois, operates the website Hyatt.com. The Hyatt.com website is copyrighted by Hyatt Corporation.   Plaintiff's Verified Complaint alleges that Hyatt Corporation made misleading and deceptive representations on its website in connection with its relationship with the Park Hyatt St. Kitts.  The Archibald family's financial damages, including the expenditure of points and cash payments to Hyatt Corporation for the booking of the hotel room at the Park Hyatt St. Kitts,, and Z.A.'s subsequent injury at the resort when the aquatic basketball hoop toppled over, both occurred outside New York and caused injury in New York, consisting of the payment to book the room based on misrepresentative information, and Z.A.'s physical injuries, including medical costs and distress felt within the state upon their return.

Hyatt Corp. regularly does or solicits business in New York, engages in a persistent course of conduct in the state or derives substantial revenue from goods or services rendered in New York.  Hyatt Corporation operates as a global entity, with its principal place of business in Illinois.  Def.'s Br., Ex. A, Decl. of Katrina Love for HC at paras. 1-2.

A recent SEC 10K filing by Hyatt Hotels Corp., Hyatt Hotels Corporation, the parent company of Hyatt Corporation, states:

> We are focused on the high-end traveler, positioning our offerings at the top of each segment that our brands operate. Our marketing strategy is designed to drive      loyalty and community. Building and differentiating each of our brands is critical to increasing Hyatt's brand preference. We are focused on targeting the distinct  guest  segments  that  each  of  our brands serves and supporting the needs of the hotels by thorough analysis and application of data and analytics. The World of Hyatt loyalty program and our digital platforms are also key components of building loyalty and driving revenue. The loyalty program focuses on deepening relationships

> with members, driving repeat stays, guest satisfaction, recognition, and differential services and experiences for our most loyal guests. Our digital platforms are our primary distribution channels providing guests, customers, and members with an efficient source of information about our hotels, distinct brand experiences, and a seamless booking experience. With a combined focus on increasing brand awareness, building a community of loyalists, and enhancing digital engagement through personalized experiences, our marketing is aimed at Hyatt  becoming  the most preferred hospitality brand.

Hyatt Hotels Corp., Annual Report (Form 10-K), at 17 (Feb. 23, 2023), available at

https://d18rn0p25nwr6d.cloudfront.net/CIK-0001468174/311c84ef-5bee-4d6d-8008-eb5627900

19e.pdf.

Plaintiffs' Verified Complaint alleges that Hyatt solicits business from New York residents through its website, Hyatt.com, and other marketing campaigns, offering services globally, including the World of Hyatt Loyalty Rewards program.  The incentive to transfer Chase points to World of Hyatt points is part of this solicitation, directly targeting New York consumers.

Hyatt Hotels Corporation's (HHC) confirms  that Hyatt operates a global hospitality business, with 1,335 full-service hotels, select service hotels, and all-inclusive resorts around 77 countries.  *Id.* at 4.  HHC further states in its 10K filing, "We, our third-party owners, hospitality ventures, franchisees, and licensees carry insurance from solvent insurance carriers that we believe is adequate for foreseeable losses and with terms and conditions that are reasonable and customary." *Id.* at 4.

Hyatt Corp. derives substantial revenue from interstate and international commerce. Hyatt is a global company with a well-established business model that generates substantial revenue from interstate and international commerce, including New York residents who use its website and loyalty rewards programs.  The Verified Complaint highlights that Hyatt benefits

from New York consumers' use of the World of Hyatt Loyalty Rewards program, which allows points earned in New York to be used at properties worldwide, including the Park Hyatt St. Kitts. Hyatt's ability to drive revenue from New York residents' participation in global loyalty programs and hotel bookings demonstrate that it engages in substantial interstate and international commerce. HHC's 10K filing shows that its business model depends heavily on interstate commerce and international transactions, meaning it is not only is foreseeable but expected that customers from New York would use Hyatt's services and could be affected by misrepresentations regarding its properties.

Hyatt Corp. has sufficient minimum contacts with New York through its regular solicitation of business from New York residents and the active use of its loyalty rewards programs with New York consumers. It would not be unreasonable or unfair to subject Hyatt Corporation to jurisdiction in New York because the company deliberately engages with New York residents and derives substantial revenue from them, thereby expecting to be held accountable in New York courts for any harm caused by its business activities.

Plaintiff's verified complaint, co-plaintiff Carmit Archibald, spells out a prima facie case of tortious conduct by defendant Hyatt Corporation under New York's Deceptive Practices Act, Gen. Bus. Law § 349. Hyatt engaged in consumer-facing conduct by marketing and promoting the Park Hyatt St. Kitts as part of its global hotel network, targeting New York consumers through its World of Hyatt loyalty program and partnerships with Chase Ultimate Rewards (Complaint ¶¶ 11-12, 16-19, 34-36, Exhibit A). Hyatt's branding and booking process created the false impression that the resort was subject to Hyatt's control and safety standards, which plaintiffs relied on when booking their vacation (Complaint ¶¶ 39-42, Exhibits A, C). This conduct was materially misleading. Carmit Archibald reasonably relied on Hyatt's

representations, believing the resort adhered to Hyatt's safety protocols and brand standards, and that it was a Hyatt operated and owned hotel.  As a result, their child, Z.A., suffered severe injuries due to a defective basketball hoop at the resort (Complaint ¶¶ 57-63, Exhibit E). The plaintiffs' reliance on Hyatt's misleading conduct directly caused their injury, meeting the statutory requirement of harm under GBL § 349.

Carmit Archibald, named individually in the Verified Complaint as a co-plaintiff, makes *prima facie* showing under GBL § 349, New York's Deceptive Practices Act, and demonstrates Hyatt's commission of a tortious act within New York under CPLR 302(a)(2).  If Hyatt Corporation authored the website outside the state of New York (i.e., in Illinois), then jurisdiction is also proper under CPLR 302(a)(3).

Defendant Hyatt Corp. used Hyatt.com to mislead New York consumers and advertise the Park Hyatt St. Kitts as part of its network, promoting the World of Hyatt loyalty program in partnership with Chase Ultimate Rewards (Compl. ¶¶ 11-12, 16-19, 34-36; Compl. Ex. A; Aff. of Carmit Archibald ¶¶21-23 Through deceptive practices on Hyatt.com, defendant Hyatt Corp. misled New York residents, including Carmit Archibald, into believing the resort was under Hyatt's operation and control and adhered to its safety and brand standards (Complaint ¶¶ 39-42; Compl. Ex. A).  These misrepresentations caused economic injury, including the transfer of Chase Ultimate Rewards points to World of Hyatt rewards and the subsequent use of those points to book the stay (Complaint ¶¶ 34-36, 44). This financial injury, along with the physical harm suffered by Z.A., satisfies the injury element of GBL § 349.

Hyatt Corp.'s conduct was consumer-oriented, materially deceptive, and caused injury by inducing Carmit Archibald and her family to reasonably rely on Hyatt Corp.'s representations, believing the Park Hyatt St. Kitts adhered to Hyatt's safety protocols and brand standards. As a

result, their child, Z.A., suffered severe injuries due to a defective basketball hoop at the resort (Complaint ¶¶ 57-63, Compl. Ex. A, B, E.). Plaintiffs' reliance on Hyatt's misrepresentations directly caused their injury, meeting the statutory requirement of harm under GBL § 349. By using Hyatt.com to engage in commercial transactions with New York residents, Hyatt Corp. committed a tortious act within the state, satisfying jurisdiction under CPLR 302(a)(2). The deceptive conduct, directed at New York consumers, caused harm that was foreseeable. Therefore, jurisdiction in New York is appropriate under CPLR 302(a)(2), and the facts adequately support a claim under GBL § 349.

Finally, although Plaintiffs' opposition focuses on specific jurisdiction under CPLR 302(a)(3), Plaintiffs do not concede that jurisdiction is improper under CPLR 301 and CPLR 302(a)(1)-(4), but require jurisdictional discovery to confirm whether jurisdiction exists under these provisions of the New York long arm statute.

## IV.    DEFENDANT'S MOTION TO DISMISS BASED ON *FORUM NON CONVENIENS* SHOULD BE DENIED.

Defendant Hyatt Corporation seeks to use the *forum non conveniens* ("FNC") mechanism effectively to rob  Z.A., age 12, with no ties to the island nation of St. Kitts and Nevis, of his ability to assert claims against an American corporation with a significant presence in this district and only a negligible presence in the target country. This Court should reject Hyatt Corp.'s invitation to twist the law in this way so that it would permanently deprive Z.A. and his mother of their claims against Hyatt Corp. Such permanent deprivation would be the actual impact of granting defendant's motion because Z.A. could not realistically bring his claim in St. Kitts.[1]

---

[1] Defendant's Notice of Motion seeks summary judgment under Fed. R. Civ. P. 56, citing lack of personal jurisdiction and requesting a stay of discovery. The Notice does not mention dismissal based on *forum non conveniens*. Courts in this Circuit consistently treat *forum non conveniens* motions as if they were brought under Rule 12(b)(6) and accordingly accept all well-pleaded factual allegations as true. *Rahl v. Bande*, 328 B.R. 387, 399 (S.D.N.Y. 2005); *see also, e.g., Van Bourgondien-Langeveld v. Van Bourgondien*, No, 10-cv-0077, 2010 WL 5464890, at *2 (E.D.N.Y. Dec. 29, 2010) (noting that "[t]he Second Circuit has concluded that a motion to dismiss on *forum non conveniens* grounds is appropriately made uber Rule 12(b)(6)"). However, unlike in the context of the

### Legal Standard for *Forum Non Conveniens*

"[U]nless the balance is strongly in favor of the defendant, the plaintiffs' choice of forum should rarely be disturbed." *Gulf Oil Corp. v. Gilbert*, 330 U.S. 501, 508 (1947). "[D]ismissal will ordinarily be appropriate where trial in the plaintiff's chosen forum poses a *heavy burden* on the defendant or the court, and where the plaintiff is *unable to offer any specific reasons of convenience supporting his choice*." *Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 249 (1981) (emphasis added). Defendant has not satisfied the requirements for dismissal here.

A motion to dismiss based on FNC may not be granted unless the defendant "prov[es] that the balance of interests tilts strongly in favor of an alternative choice forum." *Brown v. Grand Hotel Eden*, 214 F. Supp. 2d 335, 340 (S.D.N.Y. 2002). District Courts have broad discretion in determining how to rule on a *forum non conveniens* motion. *Norex Petroleum Ltd. v. Access Industries*, 416 F.3d 146, 153 (2d Cir. 2005). Plaintiff's choice of forum should not be disturbed unless the defendant demonstrates that "the trial in the chosen forum would be unnecessarily burdensome for the defendant or the court." *Iragorri v. United Techs. Corp.*, 274 F.3d 65, 71 (2d Cir. 2001)(internal quotes omitted). In reviewing motions to dismiss based on FNC, courts must arm themselves with an appropriate degree of skepticism in assessing whether the defendant has demonstrated genuine inconvenience and clear preferability of the foreign forum." *Iragorri* at 75. This vigilance is required because "defendants . . . may move for dismissal under the doctrine of *forum non conveniens* not because of genuine concern with convenience but because of . . . forum-shopping reasons. *Id*. Courts must also be wary "of depriving, in the name of 'convenience,' a plaintiff of an American forum when the parties . . . have a legitimate connection to the United States." 14D Charles Alan Wright & Arthur R.

---

usual 12(b)(6) motion, a court evaluating a *forum non conveniens* motion may consider affidavits and certain other evidence outside the pleadings. *Van Bourgondien-Langeveld*, 2010 WL 5464890 at *3.

Miller, *Federal Practice & Procedure* § 3828 (3d ed. 1998). Courts should be guarded in granting FNC motions. *Id.*

The Second Circuit applies a "three-step process to guide the exercise of that discretion." *Iragorri* 274 F.3d at 73. The three-step process that guides this Court in exercising its discretion to grant or deny an FNC motion consists of (1) determining the degree of deference given the plaintiff's choice of forum; (2) whether the alternative forum proposed by defendant is adequate to adjudicate the dispute; and (3) balancing the private and public interests implicated in the choice of forum. *Norex Petroleum Ltd.* F.3d at 153. The "heavy burden" with respect to all three elements is on defendant in opposing plaintiff's forum choice. *Sinochem Int'l Co. v. Malaysia Int'l Shipping Corp.*, 549 U.S. 422, 423 (2007).

### A. Plaintiffs' Choice of Forum Should be Accorded Substantial Deference.

"*Any* review of a *forum non conveniens* motion starts with a '*strong* presumption in favor of the plaintiff's choice of forum.'" *Norex*, 416 F.3d at 154 (quoting *Piper Aircraft Co.* 454 U.S. at 255) (emphasis added). "[U]nless the balance is strongly in favor of the defendant, the plaintiff's choice of forum should rarely be disturbed." *Gulf Oil Corp.*, 330 U.S. at 508. When the plaintiff sues in his home forum, as is the case here, and "there are only two parties to a dispute," the resident "should not be deprived of the presumed advantages of his [or her] home jurisdiction except upon a clear showing of facts which either (1) establish such oppressiveness and vexation to a defendant as to be out of all proportion to plaintiff's convenience, which may be shown to be slight or nonexistent, or (2) make trial in the chosen forum inappropriate because of considerations affecting the court's own administrative and legal problems." *Koster v. American Lumbermens Mut. Cas. Co.*, 330 U.S. 518, 524 (1947). "In any balancing of conveniences, a real showing of convenience by a plaintiff who has sued in his [or her] home

forum will normally outweigh the inconvenience the defendant may have shown." *Id*; *see also Brown v. Marriott Int'l, Inc.*, 14-CV-5960 (SLT) (MDG), 7 (E.D.N.Y. Oct. 6, 2017).

**B.  St. Kitts is Not an Adequate Alternative Forum.**

The Second Circuit in *Inragorri* wrote, "Courts should be mindful that, just as plaintiffs sometimes choose a forum for forum-shopping reasons, defendants also may move for dismissal under the doctrine of *forum non conveniens* not because of genuine concern with convenience but because of similar forum-shopping reasons."  274 F.3d at 75.  This court should be skeptical in assessing whether Hyatt Corporation has demonstrated genuine inconvenience and a clear preferability for St. Kitts as an alternative forum. *See id.*.

"At the outset of any *forum non conveniens* inquiry, the court must determine whether there exists an alternative forum." *Brown v. Marriott Int'l, Inc.*, 14-CV-5960 (SLT) (MDG), 8 (E.D.N.Y. Oct. 6, 2017) (quoting *Piper Aircraft Co*., 454 U.S. at 255 n.22). "Ordinarily, this requirement will be satisfied when the defendant is amenable to process in the other jurisdiction" *Id.* (quoting *Norex Petroleum Ltd* at 158).  Here, Hyatt Corp. has agreed to personal jurisdiction in St. Kitts.

In rare circumstances, where the remedy offered by the other forum is unsatisfactory, the other forum may not be an adequate alternative.  *See Piper Aircraft Co.*, 454 U.S. at 255.  The Second Circuit has made clear, "a case cannot be dismissed on grounds of *forum non conveniens* unless there is presently available to the plaintiff an alternative forum that will permit it to litigate the subject matter of its dispute." *Norex Petroleum Ltd*. 416 F.3d at 159.  Here, the subject matter of Plaintiffs' dispute is vicarious liability based on agency law, and defendant Hyatt Corp has failed to show that the Plaintiffs can litigate the subject matter of this dispute in St. Kitts.  *See Brown v. Marriott Int'l, Inc*., 14-CV-5960 (SLT) (MDG), 10 (E.D.N.Y. Oct. 6,

2017); *see also Piper Aircraft Co.*, 454 U.S. at 255; *see also Norex Petroleum Ltd.*, 416 F.3d at 159.

In *Ramirez de Arellano v. Starwood Hotels & Resorts Worldwide, Inc.*, 448 F.Supp.2d 520, 523 (S.D.N.Y. 2006), the plaintiffs similarly asserted that the defendant was vicariously liable for the theft of their belongings at a hotel in Spain, which they attributed to the hotel's negligence. The defendant, as in the case here, argued that it neither owned nor operated the hotel, claiming that the actual owner was a Spanish entity, and sought dismissal on the grounds that Spain provided a more convenient forum. *Id.* At 522-523. This Court, however, denied the motion because the defendant failed to address whether Spanish law allows for vicarious liability claims. *Id.* At 528. In *Fournier v. Startwood Hotels & Resorts Worldwide, Inc.*, 908 F.Supp.2d 519, 523 (S.D.N.Y. 2012), the plaintiff and defendant made claims similar to the parties here. This Court again denied Starwood Hotels' FNC motion and held "[a]lthough Starwood consented to personal jurisdiction in Finland, it has failed to demonstrate that a Finish court would permit Fournier to litigate the issue of agency liability." *Id.*

Here, defendant Hyatt Corp. has failed to meet its burden to show a required element of seeking dismissal based on FNC: that St. Kitts permits litigation of vicarious liability and/or agency claims. On this ground alone, the Court can properly deny Hyatt Corp.'s FNC motion. Defendant Hyatt Corp. fails to carry its burden to demonstrate that St. Kitts affords Plaintiffs an available adequate alternative forum. As such, Hyatt Corp.'s motion to dismiss on FNC grounds can be denied without consideration of the third step of the analysis, which includes private and public interests analysis. *See Norex Petroleum Ltd.,* 416 F.3d at 160; *see also Brown v. Marriott Int'l, Inc.*, 14-CV-5960 (SLT) (MDG), 11 (E.D.N.Y. Oct. 6, 2017).

C.  **The Private and Public Interest Factors Do Not Support Dismissal**

     i.       **The Private Interest Factors**

A court looks at private interest factors to determine which forum is the most convenient to host the litigation. *Iragorri*, 274, F.3d at 73. Relevant factors include the ease of access to sources of proof; availability of compulsory process for attendance of unwilling, and the cost of obtaining attendance of willing witnesses. Other relevant factors include the possibility of viewing the premises, if view would be appropriate to the action; and all other practical problems that make trial of a case easy, expeditious, and inexpensive. *Id.* at 73-74; *see also Gilbert*, 330 U.S. at 508. However the district court has discretion and need not address each of these factors to resolve an FNC motion. *Norext Petroleum Ltd.*, 416, F.3d at 155. The plaintiffs' choice of forum should not be disturbed when transferring it would simply shift the inconvenience from one party to the other. *Breindel v. Levitt & Sons, Inc.*, 294 F. Supp. 42, 44 (E.D.N.Y., 1968) (citation omitted).

Instead of simply characterizing the case as one in, for example, negligence, products liability, vicarious liability, deceptive practices, or some other area of law, the court should focus on the precise issues that are actually to be tried. The Court should take into account the convenience of the parties, availability of witnesses and the evidence needed for the trial of such issues. *Iragorri*, 274 F.3d at 74. Here, Plaintiffs Z.A. and Carmit Archibald claim that Hyatt Corporation is liable based on an apparent agency theory or agency by estoppel.

This case will be inconvenient no matter where it is litigated because the relevant witnesses reside in three different jurisdictions– New York, Illinois, and St. Kitts. In its brief, Hyatt Corp. argues that the witnesses to the incident are located in St. Kitts, but they have not come forward with the identity of anyone specific in St. Kitts with relevant knowledge of the

incident. but has failed to disclose who exactly those witnesses are. Def.'s Br. At 13-14. As a global hotelier, Hyatt Corp. can easily make witnesses available in New York. Even if it identifies witnesses in St. Kitts and Illinois, transporting a few individuals is logistically simple and less burdensome than forcing an infant plaintiff to litigate abroad. *See Norex* at 155. "There is no serious inconvenience when two witnesses from St. Kitts need to travel to New York for, at most for a one or two week trial on liability and be put up at a Hyatt hotel here in New York. *See, Cromer Finance Ltd. v. Berger*, 158 F.Supp 2d 347, 360 (S.D.N.Y. 2001); *see also, Calavo Growers of California v. Generali Belgium*, 632 F.2d 963, 969 (2d Cir. 1980), *cert. denied* 449 U.S. 1084 (1981) ("It will often be quicker and less expensive to transfer a witness or document than to transfer a lawsuit") (Newman, J., concurring).

Here, Plaintiffs' choice of New York as the forum reflects bona fide reasons grounded in their deep personal, professional, and economic ties to this district. Z.A. and Carmit reside on Manhattan's Upper West Side with their three children, including infant plaintiff Z.A. Dr. Archibald, a board-certified OB-GYN since 2006, completed her residency at Mount Sinai Medical Center here in New York. Dr. Archibald co-owns Upper East Side Gynecology, which is located in this district, and she serves as an Assistant Clinical Professor at the Mount Sinai School of Medicine, also located in this district. Her medical practice primarily serves patients in New York. Georges Archibald, Carmit's spouse and Z.A.'s father, is a senior executive based in Manhattan and Chief Regional Officer at a financial services firm here. He oversees firm operations, chairs management committees, and serves on various boards. Georges also holds a law degree from Benjamin N. Cardozo Law School, which, too, is in this district, and is admitted to practice law in the State of New York.

Z.A.'s medical care and treating physicians and specialists are in Manhattan. Z.A.'s plastic and reconstructive surgeon at Mount Sinai Surgical Associates is treating the laceration on his forehead, is in this district. Z.A. also receives dermatological care for the same injury and sees an optometrist for treatment of traumatic cataracts, all from providers based in New York.

Plaintiffs' engagement with Hyatt.com and World of Hyatt Rewards reinforces the connection to New York. Carmit booked the Archibald family's stay at the Park Hyatt St. Kitts through the interactive website Hyatt.com from their home on New York's Upper West Side, transferring Chase ultimate rewards points into World of Hyatt rewards points to complete the booking. Hyatt.com targets consumers through its partnership with Ultimate Rewards, incentivizing participation in its loyalty program. Hyatt's deceptive marketing induced Carmit to believe the resort was part of its network and subject to Hyatt's safety protocols and brand standards, leading them to book the vacation.

Transferring the case outside of New York would disrupt nearly every aspect of the Archibalds' personal and professional lives. Z.A., currently a seventh-grader at the Ramaz School in Manhattan, would face interruptions to his schooling and extracurricular activities, adding unnecessary instability to his routine. Z.A.'s medical care is concentrated in this district. His plastic and reconstructive surgeon, dermatologist, optometrist, and pediatrician—each treating injuries stemming from the incident—are all based in Manhattan. No less than four of the key damages witnesses are in New York. Conducting the proceeding outside of New York would add logistical challenges and expenses, such as coordinating testimony and arranging travel for medical professionals. Requiring Z.A. and his family to litigate the case in St. Kitts would add unnecessary logistical challenges and expenses. The convenience of the New York

forum allows for the efficient presentation of evidence, including live testimony from Z.A.'s treating doctors, further supporting Plaintiffs' choice of New York as the proper venue.

Dr. Archibald's medical practice requires her regular presence in New York to serve patients, and George's executive role demands daily involvement with his firm's operations.

Additionally, the plaintiffs' economic reliance on World of Hyatt's loyalty rewards program underscores the transactional connection between this litigation and New York. Their reliance on Hyatt's misrepresentations through Hyatt.com caused both financial injury, in the form of cash payment and transferred rewards points, and personal injury, with Z.A.'s injuries at the resort.

Given these substantial personal, professional, and transactional ties, New York is the most appropriate and convenient forum. Hyatt's deceptive marketing and representations through Hyatt.com induced the Archibalds' reliance, resulting in both economic harm and Z.A.'s physical injuries. These facts support plaintiffs' claims and demonstrate that New York is the proper forum to adjudicate this matter.

Relevant liability and damages witnesses are concentrated in New York. These include Plaintiff's Medical Providers, including Dr. Philip Torina (plastic surgeon), Dr. Michael Cameron (dermatologist), Dr. Sarah Sutnick (optometrist), and Z.A.'s pediatrician, Dr. Herbert Lazarus—are all based in Manhattan.  Liability witnesses able competent to speak about Hyatt's business practices with regard to its website, loyalty rewards program, and Plaintiff's agency and vicarious liability claims are likely located at Hyatt's headquarters in Chicago, Illinois. For example, Katrina Love, Director of Global Claims for both Hyatt Corporation  and Hyatt Hotels Corporation, in both of her sworn declarations in support of defendant's motion (Love Decl., ECF 23-1 and ECF 23-2), omits where she is located.  Ms. Love does not say if she is a resident

of St. Kitts or Illinois. It stands to reason that Ms. Love could be a resident of New York. According to the attached declaration of Carmit Archibald, at least one of the witnesses to the subject occurrence at the Park Hyatt St. Kitts was also a guest from New York. In discovery, Hyatt Corp. would be able to come forward with the identity of that witness' name and contact information.

It is expected that employees at the Park Hyatt St. Kitts would be willing to testify. Indeed, Hyatt has not identified any Kittitian witnesses who would *not* be willing to appear in New York and testify. Defendant merely refers to the fact that any (unidentified) Kittitian witnesses are beyond this Court's subpoena power. Def.'s Br. p. 13. However, this is an irrelevancy at this point. *See Rosen v. Ritz-Carlton Hotel Co.*, 2015 WL 64736 *4 (S.D.N.Y. 2015) ("Even if a party's witnesses are beyond the subpoena power of the Court, if neither party asserts that a witness will be unwilling to testify voluntarily, the availability of process to compel testimony is irrelevant to the transfer analysis").

In its brief, defendant states that the case should be transferred to St. Kitts in part because medical documents/reports are located there. Defendant states, "the vast majority, if not the entirety of this evidence is located in the British West Indies." (Def.'s Br. at 14).[2] The British West Indies is a region consisting of a collection of former British colonies that have since become independent states or self-governing territories. Additionally, the Bahamas—cited by the defendant as an adequate alternative forum—has no relevance to this dispute. Def.'s Br. at pp. 12-13. Defendant's cursory statement that the entirety of the evidence in this case is located in the British West Indies (ostensibly, Defendant means St. Kitts), fails to specify what relevance such evidence has in this case. Surely that evidence is not relevant to apparent authority/agency claims, as that evidence would likely be in Chicago, Illinois at Hyatt Corporation's headquarters,

---

[2] Defendant ostensibly refers to St. Kitts and the British West Indies interchangeably.

along with the name of other guests staying at the resort who are also from New York. Without specifying the relevance of the documents to which defendant is referring, there is no support in the record that entitles Hyatt Corporation, which is based in Chicago, to a change forum to St. Kitts or the "British West Indies" or the "Bahamas." The known documents relevant to the issue of liability have already been produced by the Plaintiff in a correspondence prior to filing suit. Defendant has produced nothing. Defendant produces no evidence or reason to transfer the case that's relevant to vicarious liability. *See, Amer. Steamship Owners Mut. Protection v. Lafarge*, 474 F. Supp. 2d 474, 484 (S.D.N.Y. 2007) ("The location of relevant documents is largely a neutral factor in today's world of faxing, scanning, and emailing documents.").

### ii.    The Public Interest Factors

It's unseemly for Hyatt Corporation to insist on applying "British West indian law." Def.'s Br. at 15. Defendant argues "the British West Indies has a strong interest in regulating and determining the standard of care at its resorts. . . New York's substantive law would not apply to an alleged accident occurring in the British West Indies, a foreign country." Def.'s Br. at 15. Notwithstanding, [i]In diversity of citizenship cases, the federal courts, when deciding questions of conflict of laws, must follow the rules prevailing in the States in which they sit." *Klaxon Co. v. Stentor Co.*, 313 U.S. 487, (1941). Here, Defendant has not made any conflict of law arguments regarding apparent agency or agency by estoppel. What's more is that management agreement between the hotel owner and manager that Defendant produced in support of its motion to dismiss includes a choice of law provision stating that the "Agreement shall be construed, interpreted, and applied in accordance with, and shall be governed by, the laws of England and Wales [...]". (ECF 23-3 at p. 59). Regardless, there's a general reluctance of courts to apply foreign law a factor in public interest analysis, and even if Defendant were to argue that New

19

York law conflicted with Kittitian law, choice of law analysis would like show that American law applies to Plaintiff's agency claim. New York choice-of-law rules require that a court must first determine whether a confllict of laws even exists. New York has a special set of choice-of-law rules for tort cases. *GlobalNet Financial,Com, Inc. v. Frank Crystal & Co., Inc.*, 449 F.3d 377, 383 (2d Cir. 2006). New York's choice of law rules apply an interest analysis, which means that the law of the jurisdiction that has the greatest interest in the litigation applies. *Id.* at 384 (citing *Schultz v. Boy Scouts of Am.*, Inc., 65 N.Y.2d 189, 197 (1985). Where vicarious liability is claimed for a tort, as it is here, the claim looks to allocate losses and the site of the tort is less important, and the parties' domiciles are more important. *See Cooney v. Osgood Mach*, 81 N.Y.2d 66, 72 (N.Y. 1993). Here, the parties domiciles are New York and Illinois, not St. Kitts. The courts in bother *Ramirez de Arellano* and *Fournier* (discussed *supra*) concluded that American law rather than the law of the country where the tort occurred would apply to the agency claims arising under facts similar to the issue in the instant matter. *Ramirez de Arellano*, 448 F.Supp 3d at 528 (finding that issues of corporate law and vicarious liability are uniquely American and intrinsic to the law of polity under which the corporation was created). Whether a New York resident can hold an American company that does business in New York liable under an apparent agency theory is of interest to New York citizens. Defendant Hyatt Corp. ignores the subject matter of this litigation (its potential liability) in arguing that the "British West Indies" has a greater interest in deciding the issues in this case.

Defendant Hyatt Corporation asks this Court to take the extraordinary step of dismissing a case brought by American citizens against an American corporation on the basis of *forum non conveniens*. With only one exception, every case defendant cites to support its FNC argument involves at least one non-American party. In *Schultz v. Boy Scouts of Am.*, the only case cited by

Hyatt Corp. which involved two American parties, the issue before the court was about the choice of law, specifically whether New Jersey or New York law should apply. *See generally, Schultz v. Boy Scouts of Am.*, Inc., 65 N.Y.2d 189, (1985). *Schultz* involved determining which jurisdiction's law was most applicable, considering the parties' connections to each state. *Id.* The case at bar involves a dispute between American parties regarding the apparent authority/agency of Hyatt Corporation. And Hyatt Corp. has not given notice regarding the application of foreign law under Fed. R. Civ. P. 44.1. There is no issue concerning the application of foreign law, as the dispute here centers on the apparent authority and agency of Hyatt Corp, an American entity. Unlike cases where Fed. R. Civ. P. 44.1 would apply to determine the substance of foreign law, the legal question at hand involves the domestic principles of apparent agency and agency by estoppel. The analysis is thus rooted in U.S. law, not foreign law. The actions-booking through Hyatt Corporation's official channels using World of Hyatt points, receiving emails from Hyatt.com, and booking through webpages copyrighted by Hyatt Corporation—demonstrate Hyatt's involvement, justifying litigation in the United States. This is a matter of agency and representations by Hyatt Corporation, making it inappropriate for dismissal under FNC.

Plaintiffs' choice of forum should be respected. Defendant's motion to dismiss on the issue of *forum non conveniens* should be denied.

**CONCLUSION**

**WHEREFORE,** for the reasons stated above, Plaintiffs respectfully request that this Court deny defendant's motion for summary judgment on personal jurisdiction and *forum non conveniens* in its entirety, or, in the alternative, defer ruling on defendant's motion until such time as Plaintiff has had the opportunity to conduct the necessary discovery to fully oppose defendant's motion.

Dated: October 16, 2024
      New York, NY

                                      Respectfully submitted,

                                        /s/ Evan M. Goldberg
                                     EVAN MILES GOLDBERG, PLLC
                                     400 East 57th Street, Ste. 4M
                                     New York, NY 10022
                                     Tel.: (212) 888-6497
                                     Fax: (646) 751-7938
                                     egoldberg@emglawfirm.com

                                     *Attorneys for Plaintiffs Z.A., et al.*

Via ECF to all Counsel of Record

22

**CERTIFICATE OF SERVICE**

Evan M. Goldberg, an attorney duly admitted to practice before this Court, certifies that on October 16, 2024, I caused the within memorandum to be filed and served upon the attorneys of record for the Defendant via ECF.

/s/ Evan M. Goldberg